ESTATE OF SAMUEL EDWARDS, DECEASED, MAX SHERMAN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Edwards v. Commissioner
Docket No. 6619-76.
United States Tax Court
T.C. Memo 1978-325; 1978 Tax Ct. Memo LEXIS 186; 37 T.C.M. (CCH) 1345; T.C.M. (RIA) 78325; August 17, 1978, Filed William L. Ringuette and Christopher J. Ray, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined a deficiency in petitioner's [1] Federal income tax for the taxable year 1969 in the amount of $ 28,359.83 and an addition to tax under section 6653(b) [2] in the amount of $ 14,179.91. *187 In the absence of adequate books and records, respondent reconstructed petitioner's income using the net worth and expenditures method, and the deficiency notice was issued on this basis. A timely petition was filed on July 12, 1976. Respondent filed a timely answer which affirmatively alleged the grounds, and the facts in support thereof, on which he relies to support his determination that petitioner is liable for the addition to tax under section 6653(b), as required under Rule 36(b). [3]
Petitioner did not file a timely reply as required by Rule 37, and respondent filed a timely motion for entry of an order that the undenied allegations in the answer be deemed admitted under Rule 37(c). Pursuant to an informal request on petitioner's behalf, this Court granted petitioner an extention of time to reply to respondent's motion. On February 2, 1977, this case was called from the calendar for a hearing on respondent's motion. Neither petitioner nor his representative appeared. Since petitioner failed to file a reply, this Court granted respondent's motion and entered an order that the undenied *188 allegations in the respondent's answer be deemed admitted. Subsequently, this Court set the date for trial which was to be held, as petitioner previously requested, in Chicago, Illinois. Before trial, one of petitioner's attorneys filed a motion to withdraw from the case on grounds that petitioner had died on March 15, 1977, his estate was being probated in Cook County, Illinois, and it was represented by other counsel. There being no objection, the motion was granted. [4]
When the case was called for trial in Chicago on January 23, 1978, no one appeared on petitioner's behalf and respondent filed two motions denominated "Motion to Dismiss for Failure Properly to Prosecute" and "Motion for Judgment by Default." The case was again called on January 26, 1978, and once again no one appeared on behalf of petitioner. At this time the Court issued an order to show cause "why respondent's motions should not be granted, the case dismissed as to the basic deficiency for failure properly to prosecute, and the case standing as submitted on *189 the record as to the fraud issue." A copy of this order was sent to Max Sherman who is the executor of the estate of Samuel Edwards. On March 8, 1978, a hearing was held in Washington, D.C. No one appeared on behalf of petitioner, and no response to our January 26, 1978 motion had been received. Therefore, by an order dated March 8, 1978, we granted respondent's motion to dismiss as to the basic deficiency, and we made our previous order to show cause absolute, the case then being submitted on the record as to the fraud issue. Such action was necessitated by the repeated failure of petitioner, his legal counsel, and, after petitioner's death, the failure of his estate's executor to appear before this Court or respond to our repeated notices as required by our rules of practice and procedure. The sole remaining issue is petitioner's liability for the addition to tax under section 6653(b) which has been submitted to us on respondent's motion. The following statement of facts is based on those portions of petitioner's petition admitted by respondent and the undenied allegations of fact contained in respondent's answer deemed admitted pursuant to this Court's order. Petitioner *190 Samuel Edwards resided in Chicago, Illinois at the time the petition was filed in this case. During 1969 he was a physician with a medical practice in East Cleveland, Ohio. He was also during that year a faculty member of Case Western Reserve University, a public health physician with the city of Cleveland, Ohio, and a pastor of a church in Cleveland. Petitioner derived taxable income from these sources during 1969, and also received rental and interest income. Petitioner filed a Federal income tax return for the taxable year 1969 with the Internal Revenue Service Center at Covington, Kentucky disclosing the following: Adjusted Gross Income
$ 16,354.31
Taxable Income
9,168.57
Tax Liability
2,387.52 This return was not prepared solely by petitioner. Because petitioner failed to maintain or to submit for examination by the respondent, complete and adequate books of account and records of his income for the taxable year 1969 as required by law, respondent used a net worth and expenditures method in order to determine petitioner's correct taxable income. On December 31, 1968, petitioner did not possess any receipts, accumulations, funds or other assets which *191 had a cost basis to him in excess of $ 42,294.28. On December 31, 1969 petitioner's net worth totaled $ 74,831.60 determined as follows: Assets
Savings Accounts (4)
$ 19,601.21
Checking Accounts (3)
4,587.88
Stocks, Bonds & Investments
7,350.37
Automobile
5,463.60
Business Assets
8,761.70
Rental Property #1
42,000.00
Rental Property #2
24,844.00
Residence & Furnishings
32,629.18
Prepaid Interest
119.92
Total
$ 145,357.86
Liabilities
Notes & Mortgages Payable
$ 62,732.01
Reserve for Depreciation
7,794.25
Total
70,526.26
NET WORTH
$ 74,831.60 No portion of the resulting $ 32,537.32 increase in net worth was due to petitioner's borrowings, or receipt of nontaxable income, or assets not properly taken into account by respondent's net worth computation. Petitioner also expended $ 32,468.87 during 1969 for personal living expenses and other purposes for which no deduction is allowable under the Internal Revenue laws. Thus, petitioner actually received $ 65,006.19 in income during 1969 computed as follows: Increase in net worth
$ 32,537.32
Personal Living Expenses
32,468.87
Income
$ 65,006.19 After appropriate *192 statutory adjustments are made, petitioner's adjusted gross income was $ 63,948.19, his taxable income was $ 58,304.63, and his tax liability for 1969 was $ 28,359.83.
Section 6653(b) imposes a 50 percent addition to tax for a year in which any part of the underpayment of tax is due to fraud. The existence of fraud is a question of fact which must be ascertained by an evaluation of all the facts of the case. Stone v. Commissioner,56 T.C. 213, 224 (1971); Stratton v. Commissioner,54 T.C. 255, 284 (1970). The burden is on the respondent to prove the existence of fraud by clear and convincing evidence. Section 7454(a); Rogers v. Commissioner,111 F. 2d 987, 989 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938); Stratton v. Commissioner,supra at 284. Respondent must prove that petitioner acted with the specific intention of evading a tax believed to be owing. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939). *193 This intention may be inferred from circumstantial evidence. See Beaver v. Commissioner,55 T.C. 85, 92-93 (1970); Pigman v. Commissioner,31 T.C. 356, 370 (1958). It is not necessary for respondent to prove how much of the underpayment for a particular year was due to fraud since the addition to tax under section 6653(b) applies to every year for which any portion of an underpayment is due to fraud. Drybrough v. Commissioner,238 F. 2d 735 (6th Cir. 1956), remanding 23 T.C. 1105 (1955); Smith v. Commissioner,32 T.C. 985 (1959). Respondent seeks to carry his burden of proof through facts deemed admitted under our Rule 37(c). Although the failure of petitioner to properly prosecute the case does not relieve respondent of his burden of proof ( Miller-Pocahontas Coal Co. v. Commissioner,21 B.T.A. 1360 (1931)), we have frequently held that respondent may carry the burden of proof with evidence deemed admitted. See, e.g., Gilday v. Commissioner,62 T.C. 260 (1974); Strachan v. Commissioner,48 T.C. 335 (1967); Morris v. Commissioner,30 T.C. 928 (1958). *194 [5]
After a careful evaluation of the record we find that respondent has carried his burden of proving by clear and convincing evidence that petitioner understated his taxable income for 1969, and that the understatement was due to fraud. There is no question as to the accuracy of respondent's determinations of petitioner's net worth increase or his nondeductible expenditures for 1969. Furthermore, respondent has both negated the existence of a nontaxable source of such increase and established several probable sources of taxable income to account for it. Thus, respondent has established the reliability of his net worth calculation as a basis upon which to make a finding of fraud. See Holland v. United States,348 U.S. 121 (1954). Petitioner reported adjusted gross income for 1969 of only $ 16,354.31, while actually receiving a total of $ 63,948.19. The very size of this omission tends to indicate that the omission was not merely an innocent oversight. In *195 fact, petitioner's personal living expenses ($ 32,468.87) alone nearly doubled his reported adjusted gross income. It is difficult to understand how petitioner could have honestly believed his reported income accurate under such circumstances. "To attribute such a disparity to oversight or error overtaxes credulity. It evidences a clear intention to misrepresent the facts and to mislead the Government." Hoefle v. Commissioner,114 F. 2d 713, 715 (6th Cir. 1940), affg. and quoting from a Memorandum Opinion of this Court. This is especially true in light of petitioner's education and sophistication. He was a physician with a medical practice who was also on the faculty of a university. He received both rental and interest income during the year in question, and was sufficiently aware of his tax reporting duties to seek assistance in preparing his returns. These facts indicate that petitioner's large understatement was not due merely to ignorance, but rather was part of a calculated effort to avoid the payment of his Federal income tax. See generally, Balter, Tax Fraud and Evasion, paragraph 8.03[9][e] (4th ed. 1976). We also find it significant that petitioner *196 failed to maintain or produce adequate books and records for the years in question. "Failure to make or keep records usual in business transactions is one of the badges of fraud in tax cases." Baumgardner v. Commissioner,251 F. 2d 311, 314 (9th Cir. 1957), affg. a Memorandum Opinion of this Court. Petitioner's failure to keep or produce adequate records made it impossible for respondent to directly determine the accuracy of his return and necessitated the use of an alternative means of computation, the net worth method which uncovered the large amount by which petitioner had understated his income. Another damaging fact is the lack of a plausible explanation by petitioner for the large discrepancy between actual and reported income. See Woodham v. Commissioner,256 F. 2d 201 (5th Cir. 1958), affg. a Memorandum Opinion of this Court. Although petitioner does allege in his petition that he is not knowledgeable about bookkeeping, we find this bare assertion an insufficient explanation in light of the magnitude of the understatement, petitioner's general education and sophistication, and the lack of more specific information as to the alleged bookkeeping *197 failures which produced the understatement. While we appreciate the difficulty petitioner's estate would have faced after petitioner's death in presenting evidence as to the net worth statement and as to the reason for the understatement of income, no effort of any kind was made. Petitioner had assistance in preparing his return, that person quite possibly could have supplied insight as to the reasons for the understatement. Furthermore, petitioner while alive consulted with attorneys in filing the petition in this Court, and would naturally have given them what evidence, leads, and assistance he could in preparing his case if he in fact had not originally been fraudulent. Petitioner failed to communicate in any way with this Court after filing his petition, and his estate has failed to appear before us or respond to any of our notices. There is no evidence that either have even bothered to attempt to present or discover exculpating evidence. On this record we believe that we are justified in holding petitioner liable for the addition to tax under section 6653(b). In summary, we conclude that respondent has carried his burden of proving by clear and convincing evidence, that *198 all or part of petitioner's underpayment of Federal income taxes for the taxable year 1969 was due to fraud, and therefore, that imposition of an addition to tax under section 6653(b) is appropriate. An appropriate order and decision will be entered.
Footnotes
1. The original petitioner, Samuel Edwards, died on March 15, 1977. Our jurisdiction is unimpaired by his death. Yeoman v. Commissioner,25 T.C. 589, 593 (1955).On April 13, 1978, we granted respondent's motion to substitute the estate as a party and to change the caption in this case accordingly. Rule 63(a), Tax Court Rules of Practice and Procedure.↩ The term petitioner as used throughout this opinion refers to Samuel Edwards, since the issue to be decided revolves around his actions. 2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in question, 1969, unless otherwise stated.↩
3. All rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Petitioner's other attorney of record filed a motion to withdraw for these identical reasons in April, 1978. This motion was also granted.↩
5. See also Amato v. Commissioner,T.C. Memo. 1977-305; Plumlee v. Commissioner,T.C. Memo. 1977-21; Costello v. Commissioner,T.C. Memo. 1976-399↩.